

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00189-CV

_____

IN THE INTEREST OF S.W., A CHILD

On Appeal from the 360th District Court
Tarrant County, Texas
Trial Court No. 360-677800-20

Concurring Memorandum Opinion by Justice Birdwell

**CONCURRING MEMORANDUM OPINION**

I concur with the majority in affirming the trial court's judgment granting Little Flower's motion for summary judgment. I write separately to provide additional facts relating to Father's first subissue on fraud.

Father argues that he has a "meritorious defense in that but for the intentional collusion to commit fraud between [Little Flower] and [Mother], [Father] would have been able to register with the paternity registry and/or intervene in the underlying termination proceedings so that he could have asserted his parental rights in the required statutory timeframe." The majority, viewing the evidence in the light most favorable to Father's position, held that there is no evidence in this record that Mother and Little Flower defrauded Father in any way preventing him from registering with the paternity registry. While I agree with the majority's conclusion, I write separately to further establish that there was no fraud upon the trial court or upon Father.

First, Father seems to suggest that Mother and Little Flower committed a fraud upon the trial court by representing to the trial court that the biological father was unknown. Indeed, in our opinion in Mother and Father's restricted appeal from the default judgment of termination, we stated categorically, but incorrectly, that the petition for termination filed by Little Flower "alleged that S.W.'s biological father was unknown[.]" *In re S.W.*, 614 S.W.3d 311, 312 (Tex. App.—Fort Worth 2020, no pet.). Although it is undisputed that Mother and Little Flower knew the identity of

2

Father, the clerk's record in the restricted appeal does not show that Mother and Little Flower affirmatively represented to the trial court that the biological father was unknown. *See In re State Farm Mut. Auto. Ins. Co.*, 614 S.W.3d 316, 336 & n.9 (Tex. App.—Fort Worth 2020, orig. proceeding) (holding a court of appeals may take judicial notice of the original record, including the briefing, in previous appellate proceedings).

On October 9, 2019, Little Flower's original petition for termination stated:

> No man has, to the best of Petitioner's information and belief, taken steps to legitimate the child in the manner provided by law. No legal parent-child relationship exists between the child's biological father and the child. It is in the child's best interest that the Court render judgment declaring that no legal parent-child relationship exists between the child and the child's biological father. It is in the child's best interest that the Court render judgment terminating all legal relationships and rights which exist or may exist between the child and the child's biological father. Such termination is sought.
>
> . . .
>
> As grounds for termination, Petitioner alleges that the biological father has not or will not, within the time prescribed by law, registered with the paternity registry under Chapter 160 of the Texas Family Code.

Moreover, Mother stated in her affidavit of relinquishment—executed the day before and attached to Little Flower's petition—that S.W. "has no presumed father under the Texas Family Code." In Mother's contemporaneously executed and similarly attached affidavit of nonsupport she further stated:

> The biological father has not established a financial or custodial relationship with the child. I was not married to nor did I attempt to

3

> marry any man at the time of conception or during my pregnancy. Paternity of the child has not been established under the laws of any state or nation. I have not deliberately misled any man who could be the father of my child by telling him that I am parenting the child, I was not pregnant, I miscarried the baby, I aborted the baby, or the baby died. The child has no presumed father under the Texas Family Code. The child was conceived in the State of Texas.

Finally, the certificate of paternity registry search, conducted and filed by Little Flower on November 7, 2019, certified that no one purporting to be the child's father had registered.

Accordingly, neither Mother nor Little Flower affirmatively represented to the trial court that the biological father was unknown, but rather only represented that there was no presumed father, that no parent–child relationship existed between S.W and the biological father, and that no man had registered with the paternity registry or had taken legal steps to legitimate the child. The record simply does not support a finding that there was a fraud upon the trial court by misrepresenting to the trial court that the biological father was unknown. And the paternity registry provided Father with the means of asserting his rights without depending on Mother, the courts, or anyone else to identify him. *In re Baby Girl S.*, 407 S.W.3d 904, 915 (Tex. App.—Dallas 2013, pet. denied).

Next, Father contends that Mother and Little Flower colluded to prevent him from learning of S.W.'s birth. Father represents that he did not learn of S.W.'s birth until December 7, 2019; however, as acknowledged by the majority, there is evidence to the contrary. When considered in their entirety, the text messages that Father

4

unqualifiedly urges as evidence of Mother and Little Flower's alleged fraud show that Father was aware of S.W.'s birth well before December 7, 2019, and likely within the statutory timeframe for asserting his rights through the registry.

On October 6, 2019, the day after S.W.'s birth, the following text message exchange occurred between Mother and an employee of Little Flower:

> Little Flower: Did you want them to come down or no?
>
> Mother:  Yes . . . . I'm down the hall from them
>
> Little Flower: Ok
>      Is 11:00 ok for me to come tomorrow to chat and get started on the paperwork? I figure you might want to sleep in a little
>
> Mother: That's fine
>
> . . .
>
> Little Flower: Also what name did you put on the birth certificate? First middle and last? You can put your last name if you haven't filled out already
>
> Mother: I'm actually hoping [adoptive mother] comes back down to talk about the last name
> I want to hyphenate the last name if she's ok with that
> They will be back they went to eat
> Also, I want to have [S.W.] with me today, since I might be leaving tomorrow
>
> Little Flower: Ok.  Just so you know. There's an original birth certificate with the name you give her at the hospital and then a new one at 6 months so you are able to put whatever first middle and last name you want which will be her "original" name so if you want your last name alone you can. Up to you. Just let me know tonight some time so I can put on the paperwork.

Also leave the father info blank otherwise he has to sign paperwork and it slows things down

This text exchange supports the reasonable inference Father urges that not only did Mother know him to be S.W.'s biological father, she also provided that information to Little Flower before the filing of its petition for termination.

On October 15, 2019, there was another text message exchange between Mother and the owner of Little Flower:

Mother: Good Morning. I don't know if [Little Flower employee] shared with you our recent exchange. I have notified numerous times from the fathers family and they are threatening to have him petition his rights. With that being said I have a huge issue with the possibility of [Father] getting custody of [S.W.]
I don't believe they are fit to take care of her one & im only comfortable with [S.W.] being with [adoptive parents]. If she doesn't go there than I have ever intention on fighting for my child.

Little Flower: Hi! Yes [Little Flower employee] told me what was going on. At this point I think we should just sit and wait. We are moving forward with everything and we should just try to not engage with them too much. If they got an attorney, they would have to serve you with their legal notices and we would need to know about that asap. Do you think they are just trying to bother you about it? And not really going to organize themselves to do something official?

Mother: Honesty I'm not sure . . . . But I don't want to take any chances. Anything is possible. I just need the plan should I be served

Little Flower: Tell me about the bio father – is he capable of obtaining an attorney and filing something? Or are they likely sort of bluffing?

Mother: [Father] makes compound pharmaceuticals for cancer patients and he's out the military now, at times he can be inconsistent and stubborn but 9 times out of 10 if his mother says something he does it. His mother has a huge influence of him and so does his aunt. I'm not sure what he does with his money b [sic]

> His mother is manipulative.
>
> His aunt is not capable of having kids so she wants [S.W.] the most

Mother alleged in her Bill of Review that on October 7, 2019, she was having misgivings about the adoption and that she was in a precarious physical and mental health condition. She claimed she was "badgered" to sign the affidavit of relinquishment. This text message exchange, however, does not reflect any misgivings on the part of Mother fully a week after the filing of the petition. Presumably recovered from her post-delivery complications, Mother was concerned with preventing Father or his family from obtaining custody of S.W.

Evidencing his mother and aunt's knowledge of Father's paternity, a reasonable inference from the text message exchange is that Father was aware of S.W.'s birth no later than October 15, 2019. First, it is improbable that Father's family was aware of S.W.'s birth on October 15, but Father was not. Second, because Father was the only one who could assert his rights, the text messages provide evidence that Father knew of S.W.'s birth well before December 7, 2019, and likely within the statutory timeframe for asserting his rights through the registry.

Father argues that Mother and Little Flower were aware of his identity and concealed the information from both the trial court and from Father. As in *Baby Girl S.*, the evidence demonstrates that Father had reason to believe that Mother could be pregnant and, despite having this information, failed to take any steps to register his intent to claim paternity to S.W. in a timely manner. 407 S.W.3d at 915.

With the above additional facts demonstrating that there was no fraud on the trial court and no fraud preventing Father from asserting his parental rights, I agree with the majority holding that there is no evidence in this record that Mother and Little Flower defrauded Father in any way preventing him from timely registering with the paternity registry.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: April 27, 2023